# In the United States Court of Federal Claims

No. 10-535 C
(Filed **Under Seal** September 27, 2010)
(Reissued: October 5, 2010)

| | |
|---|---|
| DCS CORPORATION, ) | |
| Plaintiff, ) | |
| v. ) | Post-award procurement protest; |
| ) | Past performance ratings; Best |
| THE UNITED STATES, ) | value award. |
| Defendant, ) | |
| and ) | |
| ) | |
| SURVICE ENGINEERING CORP. ) | |
| Defendant-Intervenor. ) | |

*John R. Tolle*, McLean, Virginia, for plaintiff.  *Bryan King*, McLean Virginia, of counsel.

*Michael N. O'Connell*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director and *Reginald T. Blades, Jr.*, Assistant Director.  *Michael G. McCormack*, Trial Attorney, Commercial Litigation Division, Air Force Legal Operations Agency, Arlington, Virginia and *Jeffrey W. Watson*, AAC/JA, Eglin Air Force Base, Florida, of counsel.

*Donald J. Walsh*, Owings Mills, Maryland, for intervenor. *Timothy Monahan*, Owings Mills, Maryland, of counsel.

## OPINION [1]

Plaintiff, DCS Corporation ("DCS") commenced this post-award procurement protest action pursuant to 28 U.S.C. § 1491(b)(1), contesting the award of a United States Air Force contract for the SEEK EAGLE Modeling, Analysis, and Tools Support ("SEMATS") contract.  The successful awardee, SURVICE Engineering

---

[1]   This Opinion was originally filed under seal on September 27, 2010, pursuant to the Protective Order filed August 11, 2010.  On October 5, 2010, parties to the above-captioned action filed a Joint Stipulation of Redactions.  That stipulation is hereby **APPROVED** and the Redacted Opinion is released for publication.

Corporation ("SURVICE"), intervened.  Defendant and the intervenor have filed motions to dismiss and all parties have filed motions for judgment on the administrative record of the procurement pursuant to RCFC 52.1. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Oral argument on these motions was held on September 16, 2010.

## FACTS

This procurement protest litigation was initiated by the Complaint for Declaratory Judgment, and Preliminary and Permanent Injunctive Relief filed by DCS on August 10, 2010.  The relevant portion of the procurement commenced on September 22, 2009, with the issuance by the United States Air Force of its request for proposals ("RFP"), Solicitation No. FA9201-R-0063 (the "Solicitation"), for the SEEK EAGLE Modeling, Analysis, and Tools Support ("SEMATS") contract. (Administrative Record, Tab 4 at 115 ("AR 4/115").)  The Air Force created the SEEK EAGLE program as its standard process for "aircraft stores certification," and designated the SEEK EAGLE Office (the "AFSEO") as the manager of all certification activities. (AR 2/7; AR 4/240 at 1.2.)  The term "aircraft stores" refers to any device intended for internal or external carriage and mounted on aircraft suspension and release equipment.  "The mission of the AFSEO is to 'Ensure new war-fighter capabilities through the application and transfer of aircraft-store compatibility expertise.'" (AR 4/240 at 1.2.)  "Compatibility expertise includes providing manpower and engineering tools, models, data, rationale, and mission planning software applications necessary to safely load, carry, and employ legacy and developmental stores (e.g. weapons, tanks, pods)."  (*Id*.)

According to the Performance Work Statement ("PWS") of the RFP, AFSEO sought to "augment its organic (civil service and military), highly technical workforce with contracted skills and expertise to primarily provide modeling and simulation (M&S), analysis and product development support." (AR 4/240 at 1.0.)  "The primary scope of the work is to provide software and data based modeling, analysis and tool/product development support."  (AR 4/240 at 1.1.)  The contractor provides the AFSEO with software developers/programmers, engineers, mathematicians, project managers and technicians to augment military and civilian personnel. (*Id*. at 1.0, 1.1.)

The Solicitation is a small business set-aside, subject to FAR 52.219-14 "Limitations on Subcontracting," with an anticipated five year contract award.  "The

contract type will be Cost Plus-Fixed-Fee with Performance Incentive, Indefinite Delivery-Indefinite Quantity and will contain one Contract Line Item Number (CLIN) fixed price for transition." (AR 4/131; 23/3657.)

At issue is whether the United States Department of the Air Force, Headquarters Air Armament Center (the "Agency" or the "Air Force" ) was arbitrary or capricious, abused its discretion, or otherwise failed to follow the criteria for evaluating and rating DCS' and SURVICE's proposals with respect to the past performance information obtained under the "Solicitation").[2]

The solicitation for the SEMATS contract established the basis for the award. Initially, the Government technical evaluation team would evaluate the technical proposals on a pass/fail basis and assign ratings of Acceptable, Reasonably Susceptible of Being Made Acceptable, or Unacceptable. (AR 4/225.)

Proposals were received from DCS Corporation, SURVICE Engineering Company, SYMVIONICS, Inc. And TYBRIN Corporation and were all rated "Technically Acceptable." (AR 24/3692.)

The next step was Cost/Price Evaluation to ascertain reasonableness and realism. (AR 4/226.) TYBRIN withdrew from competition when it was acquired by another company. (AR 23/3662.) The cost/price proposals for the remaining three offerors were found to be realistic and reasonable. SYMVIONICS' proposal had the lowest price/cost. SURVICE's cost/price proposal was ███████████ than SYMVIONICS'. DCS' cost/price proposal ███████ SURVICE's by ██████████ ███████.

The remaining step before reaching an award decision was to complete a Performance Confidence Assessment for each offeror. The offerors were asked to "submit Performance Information sheets identifying active or completed prior efforts, either Government or commercial, that are most relevant to managing the requirements of the SEMATS contract (up to six (6))." (AR 4/170.) If the offeror

---

[2] In counts two and three of the Complaint, plaintiff pleads issues other than the evaluation and rating of past performance information but does not address these issues in its briefs or at oral argument. Accordingly, these issues are considered to have been abandoned. *Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002); *L-3 Communications EOTech., Inc. v. United States*, 87 Fed. Cl. 656, 659 n.2 (2009).

proposed subcontractors, the Performance Information Sheet was to be submitted "proportional to the amount of work the subcontractor will be performing." (*Id*.) In addition, by using questionnaires "the contracting officer shall seek relevant performance information on all offerors based on (1) the past and present efforts provided by the offeror and (2) data independently obtained from other Government and commercial sources." (AR 4/227.) The purpose of the past performance evaluation was "to allow the Government to assess the offeror's ability to perform the effort described in this RFP, based on the offeror's demonstrated present and past performance." (*Id*.) In making this assessment it was provided that "sub-contractors that will perform major or critical aspects of the requirement will be rated as highly as past performance information for the principal offeror." (AR 4/227 (as changed by AR 5/277 at 6a).)

A Performance Confidence Assessment Group ("PCAG") of five persons was established to rate each offeror's ability to perform the efforts described in the SEMATS RFP, based on the offeror's demonstrated present and past performance. (AR 2/21, 23/3661.) The quality and extent of the offeror's performance deemed relevant in accordance with Table 1 of Section M was evaluated by the Government. (AR 4/170.) The relevancy factors in Table 1 of Section M were (AR 4/228):

|  | Magnitude |  | Technical Complexity |
|---|---|---|---|
| **Very Relevant** | >=$5M per year and >=40 MYEs per year | AND | Work required management of personnel performing work in Engineering plus 2 of the following areas: Mathematical/Statistical Analysis, Computer Science or Information Technology Support |
| **Relevant** | >=$3M per year and >=25 MYEs per year | AND | Work required management of personnel performing work in Engineering plus 1 of the following areas: Mathematical/Statistical Analysis, Computer Science or Information Technology Support |
| **Somewhat Relevant** | >=$1M per year and >=10MYEs per year | AND | Work required management of personnel performing work in 1 of the following areas: Engineering , Mathematical/Statistical Analysis, Computer Science or Information Technology Support. |
| **Not Relevant** | <$1M per year or <10 MYEs per year | OR | Work required management of personnel performing work in none of the following: Engineering, Mathematical/Statistical Analysis, Computer Science or Information Technology Support |

Note: If the number of Man Year Equivalents (MYEs) is not available, the magnitude will be determined on dollar value.

- 4 -

The rating scale for each past performance effort identified by the offerors together with the additional efforts collected from questionnaires sent by the PCAG was (AR 4/181):

**Exceptional (E):** Performance met and exceeded many of the contractual requirements that benefitted the customer.  The contractor accomplished the assessed factors and sub factors with few minor problems.  Corrective actions taken by the contractor were highly effective.

**Very Good (VG):** Performance met and exceeded some of the contractual requirements that benefitted the customer.  The contractor accomplished the assessed factors and sub factors with some minor problems.  Corrective actions taken by the contractor were effective.

**Satisfactory (S):** Performance met the contractual requirements.  The contractor accomplished the assessed factors and sub factors with some minor problems.  Corrective actions taken by the contractor were satisfactory.

**Marginal (M):** Performance does not meet some contractual requirements.  The contractual performance of factors and sub factors reflected a serious problem.  Contractor has not yet fully implemented corrective actions.  The proposed actions were only marginally effective or not identified.

**Unsatisfactory (U):** Performance does not meet most contractual requirements and recovery is not likely in a timely manner.  The contractual performance of the factors and sub factors contains serious problem(s) for which the contractor's corrective actions were ineffective.

Note: Your comments on unsatisfactory ratings and other ratings where problems have not been satisfactorily resolved are critical to our past performance evaluation.  Please take the time to provide comments.

**Not Applicable (N/A):** The contractor was not required to perform in the assessed area.  A "N/A" response does not affect the evaluation, either favorably or unfavorably.

The assessment process was designed to "result in an overall performance confidence assessment of Substantial Confidence, Satisfactory Confidence, Limited Confidence, No Confidence, or Unknown Confidence, as defined in Table 2." (AR 4/227.)

Table 2 in Section M provided descriptions as follows (AR 4/228):

| Rating | Description |
|---|---|
| SUBSTANTIAL CONFIDENCE | Based on the offeror's performance record, the government has a high expectation that the offeror will successfully perform the required effort. |
| SATISFACTORY CONFIDENCE | Based on the offeror's performance record, the government has an expectation that the offeror will successfully perform the required effort. |

| LIMITED CONFIDENCE | Based on the offeror's performance record, the govern has a low expectation that the offeror will successfully perform the required effort. |
|---|---|
| NO CONFIDENCE | Based on the offeror's performance record, the government has no expectation that the offeror will be able to successfully perform the required effort. |
| UNKNOWN CONFIDENCE | No performance record is identifiable or the offeror's performance record is so sparse that no confidence assessment rating can be reasonably assigned. |

As set forth in the AR at 18/1640-42, the PCAG considered 20 contracts providing past performance information for DCS and its subcontractors, of which 18 met some degree of relevancy. Six past contracts were performed by DCS, of which three were deemed "Very Relevant," one was deemed "Relevant," and two were deemed "Somewhat Relevant." Subcontractor "Kratos," listed to perform 20% of the SEMATS contract, had one very relevant past contract. Subcontractor "ManTech," listed to perform 15% of the SEMATS contract, had five very relevant, two relevant and four somewhat relevant past contracts. Two of DCS' very relevant past contracts were rated "E" and one was rated "VG." The relevant past DCS contract was rated "E." One somewhat relevant past DCS contract was rated "VG" and the other was rated "S." Two of ManTech's five very relevant past contracts were rated "E" and three were rated "VG." One of ManTech's somewhat relevant contracts was rated "E" with the remaining contracts rated "VG." Kratos' very relevant past contract was rated "E."

Based on this past performance record of DCS and its subcontractors the five members of the PCAG determined that "[t]he government has a high expectation that the offeror will successfully perform the required effort." (AR 18/1641.) A "Substantial Confidence" assessment for the DCS proposal was provided. (*Id*.)

As set forth in the AR at 19/2433-35, the PCAG considered 36 contracts providing past performance information for SURVICE and its subcontractors of which 27 met some degree of relevancy. Three past contracts were performed by SURVICE of which two were deemed relevant and one was deemed somewhat relevant. Subcontractor "ARA," listed to perform 10% of the SEMATS contract, had two very relevant, one relevant, and four somewhat relevant past contracts. Subcontractor "Wyle," listed to perform 30% of the SEMATS contract, had 10 very relevant, two relevant and five somewhat relevant past contracts. The three SURVICE past contracts were rated "E." The two ARA very relevant past contracts were rated "E." ARA's relevant past contract was rated "S " and two of its four

- 6 -

somewhat relevant past contracts were rated "E" with the remaining two rated "VG" and "S." Seven of Wyle's ten very relevant past contracts were rated "E" with the remaining three rated "VG." Wyle's two relevant past contracts were rated "E." Two of Wyle's five somewhat relevant past contracts were rated "E" with the remaining contracts rated "VG."

Based on this past performance record for SURVICE and its subcontractors, the five PCAG members determined that "the government has a high expectation that the offeror will successfully perform the required effort." (AR 19/2434.) A "Substantial Confidence" assessment was provided for the SURVICE proposal. (*Id.*)

As set forth in the AR at 23/3680-83, the PCAG considered six contracts providing past performance information for SYMVIONICS. One contract was deemed very relevant, one contract was deemed relevant and the remaining four contracts were deemed somewhat relevant. The very relevant contract was rated ▮▮▮▮ the relevant contract was rated ▮▮▮ one somewhat relevant contract was rated ▮▮▮ and the remaining three were rated ▮▮▮ Based on this past performance record for SYMVIONICS, the PCAG assigned a performance confidence assessment of ▮▮▮▮▮▮▮▮▮▮.

The RFP for the SEMATS contract provided that if the lowest price evaluated technically acceptable offer is judged to have a substantial confidence performance confidence assessment, that the offer presents the best value for the Government and the award shall be made to the offeror. (AR 4/228.) As the lowest price evaluated technically acceptable offer was submitted by SYMVIONICS, but its performance confidence assessment was ▮▮▮▮▮▮▮▮ not "Substantial Confidence," the RFP provided that, in that event, the source selection authority "shall make an integrated assessment best value award decision." (AR 4/229.)

The Source Selection Evaluation Team ("SSET") for the SEMATS contract recommended awarding the SEMATS contract to SURVICE. (AR 23/3684.) This was based on a determination that the increased confidence of successful performance more than merited the increased cost over SYMVIONICS lowest cost offer and the substantial confidence ratings assigned to both DCS and SURVICE did not provide a basis for selecting one over the other, so that SURVICE's cost, which was somewhat lower than DCS' provided the best value to the Government. (*Id.*)

The Source Selection Authority awarded the SEMATS contract to SURVICE on his determination that its proposal "provides the United States Air Force (USAF) the best overall value." (AR 24/3690.)

_____

## DISCUSSION

As an initial jurisdictional matter, plaintiff must show that it has standing to bring this post-award procurement protest. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). As an offeror for the procurement at issue, with direct economic interest affected by the award, and having a substantial chance of obtaining the award were its protest asserting a prejudicial failure to evaluate past performance information, to be sustained, plaintiff has shown the requisite standing. *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307-08 (Fed. Cir. 2006); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).

Plaintiff contests the validity of the Air Force's "Substantial Confidence" assessment for SURVICE, asserting that a correct evaluation would have resulted in only a "Satisfactory Confidence" assessment with a resulting favorable impact on DCS' chances of obtaining the award. Upon examination, it is concluded that plaintiff has not established a viable basis for its assertions as to evaluation error.

The RFP concerning past-performance material for the SEMATS contract provided, "[o]nly references for the same or similar type contract desired." (AR 4/170.) The RFP also provided that for the quality and satisfaction rating for contracts completed in the past five years, "[p]rovide any information currently available (letters, metrics, customer surveys, independent surveys, etc.) which demonstrates customer satisfaction with overall job performance and quality of completed product for same or similar type contract." (*Id*.) Plaintiff asserts that "same or similar type-contract" equates to dollar value and as the award amount for the SEMATS contract was approximately $65 million over five years, a "same or similar" contract would have to be approximately $13 million for each year. (Pl.'s Opp'n Br. 21, ECF No. 25.) Plaintiff notes that DCS submitted more past performance submissions with yearly dollar values of at least $13 million than SURVICE submitted. (*Id*.)

However, the RFP for the SEMATS contract stated, "[t]he Government will evaluate the quality and extent of offeror's performance deemed relevant in accordance with Section M, Table 1." (AR 4/170.) The standard provided in Table 1 provided that the highest relevance, "Very Relevant," is assigned to past performance efforts having a yearly dollar value of at least $5 million. (AR 4/228.)

If plaintiff wished to contest the RFP provision commencing "Very Relevant" past performance at efforts having at least $5 million in annual receipts, it was required to do so before final proposals were received from the offerors. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). The cases plaintiff cites do not support the application of a relevance standard contrary to a specific provision in the applicable specifications and concern situations where there was a significant absence of similarity. That is not the circumstance involved in the SEMATS procurement. Plaintiff does not challenge any of the past performance ratings reached by the Air Force under the relevance standards set forth in Table 1 of Section M.

Plaintiff also asserts that SURVICE in its past performance submissions did not comply with the RFP provision stating that, "[i]f subcontractors are proposed, provide Performance Information Sheets for subcontractors proportional to the amount of work the subcontractor will be performing." (AR 4/170.) It appears to be plaintiff's contention that SURVICE's past performance subcontractor submissions were not proportional because SURVICE was to perform 60% of the SEMATS contract and its subcontractors were to perform 40% of the contract, but SURVICE submitted 3 past performance efforts it had performed and 4 past performance efforts one of its subcontractors had performed. An examination of the Administrative Record reveals that a past performance effort submitted by SURVICE for its subcontractor Wyle was comprised of two contracts, one for a 4-year period and a sole source "bridge" contract thereafter for less than one year. (AR 13/1295.) In its consideration of SURVICE's proposal, the Air Force noted that "[t]wo of the Wyle contracts were one effort; base contract with bridge." (AR 22/3640.) Therefore SURVICE's past performance submission was comprised of 3 of its own past performance efforts and 3 of its subcontractor's past performance efforts.

In addition the PCAG located a number of additional past performance efforts performed by SURVICE's subcontractors and relied on their performance ratings as well as SURVICE's three past performance efforts with "Exceptional" performance

ratings, in reaching the "Substantial Confidence" assessment for the SURVICE proposal. (AR 23/3675.) The RFP clearly provided that "sub-contractors that will perform major or critical aspects of the requirement will be rated as highly as past performance information for the principal offeror." (AR 4/227 (as changed by AR 5/277 at 6a).) This was accomplished for the SURVICE proposal. (AR 23/3675.)

It is recognized that the past performance information evaluated for DCS's proposal contained more than three efforts performed by DCS, but this in no way detracts from the evaluation of SURVICE's proposal. Each proposal was evaluated separately by the PCAG. The PCAG, complying fully with evaluation criteria, did not require any specific number of past performance efforts to reach a substantial confidence assessment. If such an assessment can be reached on the basis of three past performance efforts, additional submissions of equal quality could be considered surplusage.

Again, the cases relied upon by plaintiff provide little relevance to the facts of this case. For example, reliance is placed on *DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501, 508 (2008), where a procurement was canceled upon a determination that the offerors had no similar past experience so that performance reliance would be placed in subcontractors. In the present case, the Air Force placed substantial confidence on the past performance by SURVICE of three efforts with excellent performance ratings plus a number of past efforts by its subcontractors with excellent or very good performance ratings. The PCAG's assessment of "Substantial Confidence" for SURVICE's proposal has a rational basis in the supporting past performance information evaluated. The court may not substitute its judgment for the Air Force's expertise in regard to this evaluation. *See Ala. Aircraft Indus., Inc.- Birmingham v. United States*, 586 F.3d 1372, 1376 (Fed. Cir. 2009).

Given the determination that the Air Force's substantial confidence assessment for SURVICE's proposal will not be overturned, there is no basis on which the best value award to SURVICE could be rejected. Having the same substantial confidence assessment as DCS, the substantially lower price offered by SURVICE provides a rational basis for the Air Force's award decision.

## CONCLUSION

The decision to award the SEMATS contract to SURVICE may be set aside if it lacked a rational basis or if the decision involved a clear and prejudicial violation of statute, regulation or procedure. *Emory Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001). None of these events occurred in the Air Force procurement action for the SEMATS contract. The award decision was well within the discretion afforded the agency in a best value negotiated procurement. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).

Accordingly, it is **ORDERED**:

(1) That Defendant's and SURVICE's Motions for Judgment on the Administrative Record are **GRANTED**;

(2) Plaintiff's Motions for Judgment on the Administrative Record and for Injunctive Relief are **DENIED**; and

(3) Defendant's and SURVICE's Motions to Dismiss are **DENIED**.

s/ James F. Merow
James F. Merow
Senior Judge

- 11 -